STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-499

LINDLEY SCOTT HOLLEMAN

VERSUS

NATALIE LOUISE BARRILLEAUX

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 122476
HONORABLE VINCENT JOSEPH BORNE, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Billy Howard Ezell, Judges.

**AMENDED AND RENDERED AS AMENDED.**

**Edward Paul Landry**
**Attorney at Law**
**211 East Main Street**
**New Iberia, LA 70560**
**(337) 364-7626**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    Lindley Scott Holleman

**Jack Derrick Miller**
**Attorney at Law**
**P. O. Box 1650**
**Crowley, LA 70526**
**(337) 788-0768**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Natalie Louise Barrilleaux**

**Nicole B. Breaux**
**Attorney at Law**
**415 N. Parkerson Ave.**
**Crowley, LA 70527-1650**
**(337) 783-0888**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Natalie Louise Barrilleaux**

**Lindley Scott Holleman**
**In Proper Person**
**210 Belmont Road**
**New Iberia, LA 70560**

**SAUNDERS, Judge**

This is an appeal by Natalie Louise Barrilleaux from the trial court's award of $1,922.95 per month for the support of the parties' minor daughter.

**FACTS AND PROCEDURAL HISTORY**

Natalie Louise Barrilleaux (hereafter "Appellant") and Lindley Scott Holleman (hereafter "Appellee") are the parents of a minor daughter, Rowan Grace Barrilleaux. Appellant is employed by Dr. William Andre Cenac as an office manager. Appellee is a member in Hollemire International, LLC (hereafter "Hollemire"), in which he has a fifty percent interest, and of Private Workforce Solutions, LLC (hereafter "Private Workforce"). Additionally, Appellee has an interest in a family trust fund.

On May 1, 2013, Appellee filed a Petition for Paternity and Custody. Appellee filed a reconventional demand, seeking sole custody and child support. Following two hearing officer conferences, Appellee was ordered to pay $1,497.00 per month in support of the child. Appellee's gross income was calculated to be $10,000.00 per month. Appellant objected to the Hearing Officer's Recommendations, which were made a temporary order of the court on August 27, 2013.

A hearing was held on September 11, 2013. Appellee testified that he received a salary of $10,000.00 per month from Hollemire, made multiple additional draws from Hollemire, and did not receive any income from the family trust. Schedule K-1 from Private Workforce indicates distributions in the amount of $6,737.00 were made to Appellee in 2012. Appellee was ordered to pay $1,922.95 per month in support of the child. The district judge found Appellant's gross income from Dr. Cenac to be $4,766.67 per month. The trial court found Appellee's gross income to be $15,500.00 per month, which included his salary of

$10,000.00 per month from Hollemire, an unspecified amount of the "draws" taken from Hollemire in addition to his salary, and his ownership interest in Hollemire. It is from this judgment that this appeal arises.

Appellant asserts the trial judge erred in finding Appellee's gross income to be $15,500.00 per month. Appellant urges us to find that Appellee's gross income includes his salary and draws from Hollemire, the net undistributed profits of Hollemire, the direct payments of Appellee's personal expenses by Hollemire, and the distributions from Private Workforce. She requests we adjust the child support award accordingly.

## DISCUSSION

In *Baggett v. Baggett*, 96-453 (La.App. 3 Cir. 4/23/97), 693 So.2d 264, 266, we noted that there is a "three tiered standard" to be applied by an appellate review of a child support award. We explained:

> When we review a trial judge's decision in a case such as the present, we must make three determinations, under three different standards of appellate review. First, we must determine whether the trial judge correctly applied the proper legal standard or standards. We do not defer to the discretion or judgment of the trial judge on issues of law. Second, we must examine the trial judge's findings of fact. We will not overturn the trial judge's factual determinations unless, in light of the record taken as a whole, they are manifestly erroneous (or clearly wrong). Third, we must examine the propriety of the alimony award. If it is within legal limits and based on facts supported by the record, we will not alter the amount of the award in the absence of an abuse of the trial judge's great discretion to set such awards.

*Id.* at 266-67 (quoting *Davy v. Davy*, 469 So.2d 481(La.App. 3 Cir.1985)).

**APPELLEE'S GROSS INCOME**

We conclude the trial court committed legal error in failing to include in the calculation of Appellee's gross income the undistributed profits of Hollemire. Louisiana Revised Statutes 9:315, *et. seq.* provides that the combined adjusted

2

gross income of both parties is used to determine the basic child support obligation. "Adjusted gross income" includes the gross income of the parties. La.R.S. 9:315(C)(1). Gross income includes:

> (a) The income *from any source, including but not limited to salaries . . .*;

> (b) Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals; and

> (c) *Gross receipts minus ordinary and necessary expenses* required to produce income . . . . "Ordinary and necessary expenses" *shall not include amounts* allowable by the Internal Revenue Service *for the accelerated component of depreciation expenses . . . .*

La.R.S. 9:315(C)(3)(emphasis added). Although not required, regular depreciation may be counted as an "ordinary and necessary expense" appropriate for use in calculating a self-employed individual's gross income. *Riggs v. LaJaunie*, 98-304 (La.App. 3 Cir. 10/7/98), 720 So.2d 114; *Dejoie v. David Guidry*, 10-1542 (La.App. 4 Cir. 7/13/11), 71 So.3d 1111.

After reviewing Hollemire's 2012 tax returns, Scott Soileau, a CPA hired by Appellant to provide expert testimony on her behalf, testified that the Hollemire's gross income less expenses for 2012 was $508,000.00. Included in this number was $7,400.00 in regular depreciation, $64,579.00 in accelerated depreciation, and charitable contributions deducted by Hollemire. The payoff of a large line of credit was deducted from the gross receipts of Hollemire for the year 2012. Although Appellant urges us to exclude the payoff as an "ordinary and necessary" business expense, we note that Appellant's expert included it as a deduction in his assessment of Hollemire's income for 2012. Therefore, we conclude the trial court

3

did not err in allowing this expense as a deduction from Hollemire's gross receipts for 2012. Although not required, we conclude that the regular depreciation is appropriately countable as an "ordinary and necessary" expense and decline to include it in Hollemire's income for 2012. Thus, we calculate the net profits of Hollemire to be $500,600.00, which is the $508,000.00 less the $7,400.00 in regular depreciation. As an equal member, Appellee's share of this amount is $250,300.00. This is the actual amount of the profit that remained in Appellee's control, and he was able to choose whether to withdraw it or leave it in the business. This translates into $20,858.33 per month. This amount clearly falls into the definition of gross income under La. R.S. 9:315(C)(3) and the trial court erred in failing to include this number in the calculation of Appellee's statutorily defined gross income.

We further conclude that the trial court erred in failing to include the distributions from Private Workforce in the calculation of Appellee's gross income. Although the tax return for Private Workforce from which the above Schedule K-1 data was derived was not introduced in evidence, there is no real dispute between the parties that the Schedule K-1 information represents the share of Appellee's profits in the company for 2012. Schedule K-1 from Private Workforce for 2012 indicates distributions were made to Appellee in the amount of $6,737.00 in 2012. This translates to $561.41 per month. This amount is clearly "income from any source" and, more specifically, "gross receipts minus ordinary and necessary expenses" under La. R.S. 9:315(C)(3).

Additionally, Appellee testified that, on May 26, 2013, he began receiving a salary of $10,000.00 per month from Hollemire. This fact is not in dispute. Salaries are clearly within the statutory definition of gross income. The trial court correctly included this amount in the calculation of Appellee's gross income.

4

We turn to the "draws" Appellee made from Hollemire. Before May 26, 2013, Appellee did not receive a salary from Hollemire. Instead, Appellee took "draws" from the company as needed. He explained:

Q. All right. And when did you start receiving your employee wages? When is the first one on this?

A. May. May 26th.

Q. Of how much

A. $2,300.00. $307.00 [sic].

Q. All right. And. have you been receiving that $2,307.00 every week since May the 26tn~

A. Yes.

Q. Why did this wage payment as an employee begin then?

A. Because we just really started paying ourselves then. Before that we would just take a draw whenever we need [sic] to get paid.

There is no doubt that Appellee's salary was properly included in the calculation of his gross income. However, after Appellee began receiving a salary, he made additional "draws" from the company. In June 2013, Appellee took a draw of $10,000.00. In July 2013, he withdrew $3,000.00. Finally, in August 2013, he withdrew $2,000.00. During these months, he was also receiving a salary of $10,000.00 per month. Regarding those withdrawals, he testified:

Q. So my question is: Is the practice you have to both get a paycheck and a [sic] take a draw?

A. No.

Q. Well then why did you take those draws?

5

A.    I mean I really don't know. Brody handles all of the financial. And when we have a little more money, then I guess he figures if we can write ourselves a little more, then he does it. I don't know. Mandy might be able to answer that for you. I really don't know.

The record clearly indicates that Appellee regularly made "draws" from Hollemire even after he began receiving a salary. Appellee's testimony that "when we have a little more money . . . we can write ourselves a little more" indicates this is likely to continue. Thus, we conclude that the average of the $15,000.00 in withdrawals made during June, July, and August 2013, when he was also receiving a salary, should be included in the calculation of Appellee's gross income. This amount translates to $5,000.00 per month.

Finally, Appellant urges us to include in Appellee's gross income at least $1,300.00 of fringe benefits paid by Hollemire on behalf of Appellee. Appellee testified that the value of the payments by Hollemire for his truck mortgage and gasoline was no less than $1,300.00 per month. Based on this testimony, we conclude that this amount should be included in the calculation of Appellee's gross income.

Based on the foregoing, we conclude that $20,858.33 per month in Hollemire's retained profits, $561.41 per month in distributions from Private Workforce, $10,000.00 per month in salary from Hollemire, $5,000.00 per month in additional "draws" from Hollemire, and $1,300 in fringe benefits paid by Hollemire are properly included in the calculation of Appellee's gross income.

**APPELLANT'S GROSS INCOME**

The trial judge found Appellant earned $4,766.67 per month. As of August 5, 2013, Appellant had earned $35,100.00 and expected to receive a $250.00 bonus.

She asks us to annualize this amount to find that her income is actually $4,923.06. This number is calculated by dividing Appellant's earnings reflected in the record by 7.16 months (January 1, 2013-August 5, 2013) and adding $20.83 per month ($250 annual bonus divided by twelve months). We accept this amount as the proper figure to use in the calculation of the child support award.

**CALCULATION OF SUPPORT**

When there is insufficient information in the record to make a determination of the amount of child support under the guidelines, remand is required. However, "remand is not required if some of the required documentation is lacking but there is sufficient other evidence in the record for the trial court to have determined the parties' gross monthly earnings and to render a child support award in accordance with the guidelines." *Collins v. Collins*, 12-726 (La.App. 3 Cir. 12/5/12), 104 So.3d 771, 774; *See also Scott v. Scott*, 43,455 (La.App. 2 Cir. 8/13/08), 989 So.2d 290 (citing *Aydelott v. Aydelott*, 42,161 (La.App. 2 Cir. 5/9/07), 957 So.2d 350). Accordingly, in the instant case, we will apply the child support guidelines and render judgment.

Louisiana Revised Statutes 9:315 – 9:315.20 are the guidelines used to determine the amount of a child support award.

> If the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in R.S. 9:315.19, the court:(1) Shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent as provided in Civil Code Article 141, but in no event shall it be less than the highest amount set forth in the schedule[.]

La.R.S. 9:315.13(B).

In exercising its discretion to award an amount of child support above the maximum amount in the schedule, the court should be guided by the desire "to

maintain the lifestyle of the child, when possible, while considering the child's reasonably proven expenses and the parent's ability to provide." *Collins*, 104 So.3d at 771 (quoting *Falterman v. Falterman*, 97–192 (La.App. 3 Cir. 10/8/97), 702 So.2d 781). Although it has been held that an award based on extrapolation from the guidelines is not an abuse of discretion[1], "simply extrapolating from the guidelines without concern and discretion by the court in balancing the needs and lifestyle of the child or children, could lead to excessive child support awards[2]." Proof of the child's needs is required. *Collins*, 104 So.3d 771 (citing *Falterman*, 702 So.2d 781).

The child support guidelines schedule for support provide for a maximum combined adjusted monthly gross income of $30,000.00 per month. It is undisputed that the cost of Rowan's babysitter is $325.00 per month and her health insurance premium is $277.99 per month. Accordingly, the child support calculations are as follows:

|  | Appellant | Appellee |  |
|---|---|---|---|
| Monthly Gross | $4,923.06 | $37,719.74 |  |
| Combined Gross |  |  | $42,642.80 |
| Percentage Share | 0.12 | 0.88 |  |

The combined gross income of the parties is $12,642.80 above the child support schedule maximum. According to the child support guidelines schedule, the basic support obligation is $2,653.00 for parties with one child whose combined adjusted gross income is $30,000 per month. Additionally, the schedule provides that the basic support obligation is $1,473 for parties with one child whose combined

---

[1] *Colvin v. Colvin*, 94–2143 (La.App. 1 Cir. 10/6/95), 671 So.2d 444, *writ denied*, 95–2653 (La. 1/5/96), 667 So.2d 522.

[2] *Collins*, 104 So.3d at 776 (quoting *Preis v. Preis*, 93–569, p. 12, (La.App. 3 Cir. 2/2/94), 631 So.2d 1349, 1356, *abrogated on other grounds by Stogner v. Stogner*, 98–3044 (La.7/7/99), 739 So.2d 762).

monthly gross is $12,600. Thus, we conclude that the proper calculation of the basic support obligation in this case is to add the basic support obligation of $2653.00 for parties whose gross income is $30,000.00 to the basic support obligation of $1,473.00 for parties whose gross income equals $12,600.00.

| | | |
|---|---|---|
| Basic Obligation Per Schedule for Parties Whose Gross Income Equals $30,000.00 | | $2653.00 |
| Basic Obligation Per Schedule for Parties Whose Gross Income Equals $12,600.00 | | $1,473.00 |
| Combined Basic Obligation | | $4,126.00 |
| Child Care Costs | | $325.00 |
| Child's Health Insurance Premium | | $277.99 |
| Total Child Support Obligation | | $4,728.99 |
| Each Party's Obligation | $567.48 | $4,161.31 |

Because of the higher combined gross income in this case and the additional costs of child care and health insurance, we conclude the appropriate amount of the child support award to Appellant to be $4,161.31. The judgment of the trial court is therefore amended to reflect this amount.

### DECREE

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Lindley Scott Holleman pay unto Natalie Louise Barrilleaux the sum of $4,161.31 per month for support of Rowan Barrilleaux.

Costs of this appeal are assessed equally between the parties.

JUDGEMENT AMENDED AND RENDERED AS AMENDED.