NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 1217

KRISTYN WISECARVER

VERSUS

GLEN WISECARVER

Judgment Rendered: SEP 1 8 2020

Appealed from the
Twenty-First Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Docket Number 2010-0003975

Honorable Jeff Oglesbee, Judge Presiding

* * * * * * * * * * * * *

| | |
|---|---|
| Emily Guidry Jones<br>C. Glenn Westmoreland<br>Sherman Q. Mack<br>Albany, LA | Counsel for Plaintiff/Appellee,<br>Kristyn Wisecarver |
| Kermit L. Roux, III<br>Isaac H. Ryan<br>New Orleans, LA | Counsel for Defendant/Appellant,<br>Glen Wisecarver |

* * * * * * * * * * * * *

BEFORE: WHIPPLE, C.J., GUIDRY, AND WOLFE, JJ.

Thirty J. Dissents and assigns reasons.

**WHIPPLE, C.J.**

This matter is before us on appeal by the defendant, Glen Wisecarver, from a judgment of the trial court in favor of plaintiff, Kristyn Wisecarver, increasing his child support obligation. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Kristyn Wisecarver and Glen Wisecarver were married on February 12, 2000, and are the parents of two children, M.J.W., born in 2003, and S.A.W., born in 2001.[1] On October 5, 2010, Kristyn filed a petition for divorce. While the divorce proceedings were pending, by agreement of the parties, the trial court signed a stipulated judgment on November 29, 2010, granting Kristyn and Glen joint custody of the children, with Kristyn designated as the domiciliary parent. Under this judgment, Glen was responsible for paying child support in the amount of $1,950.00 per month. Thereafter, the trial court signed a judgment of divorce on April 15, 2013.

On July 24, 2017, Kristyn filed a rule for contempt, to suspend and modify custody, and to modify child support, contending that a material change in circumstances had occurred, necessitating a suspension and subsequent modification of Glen's physical custody. Kristyn further alleged that a change in the needs of the children and the income of the parties had occurred, necessitating a modification of child support. Additionally, she alleged that Glen had failed to follow the previous consent judgment and should be found in contempt of court for his failure.

In response, Glen filed exceptions of no cause of action and vagueness, arguing that Kristyn's rule contained conclusions without supporting material facts. Kristyn opposed the exceptions, but also filed an amended pleading further expanding on her allegations before the matter was heard. After a hearing, the

---

[1]Although S.A.W. is now a major, at the time of the hearing, S.A.W. was a minor.

court denied the exception of no cause of action, but granted the exception of vagueness, giving Kristyn fifteen days to amend her pleading.[2]

On April 12, 2018, Glen filed a rule for contempt against Kristyn, alleging that she had not adhered to certain provisions in the 2010 stipulated judgment. On April 13, 2018, Glen filed a rule to decease child support, alleging that he had undergone neck and back surgery, with additional surgeries scheduled. He also alleged that he had filed for disability and his income was "less than $5,000[.00] per month," which was "significantly less than his previous salary," warranting a decrease in his support obligation.

Kristyn's and Glen's rules were set for hearing and continued several times, until a hearing was eventually held on January 16, 2019. At the hearing, both parties agreed to dismiss their respective rules for contempt, and Kristyn dismissed her rule to suspend and modify custody. Accordingly, the only remaining matters to be heard were the parties' cross-motions to modify child support. Both parties testified and presented evidence. At the end of the testimony, the trial court left the record open for fifteen days, and invited both sides to file post-trial memorandums before a decision would be rendered.[3]

Thereafter, on April 9, 2019, the trial court signed a judgment, granting Kristyn's rule for modification of child support and denying Glen's rule to decrease child support. The trial court found that although Glen alleged that his income was less than $5,000.00 per month, he testified that his total monthly income was actually $13,960.00. Additionally, relying on the definition of gross income found in LSA-R.S. 9:315(C)(3) and Glen's twenty-five percent ownership interest in Wechem, Inc., his family's company, the trial court imputed to him additional income of $3,000.00 per month for income from the business. The trial

---

[2]In accordance with this ruling, Kristyn amended her rule on March 23, 2018.

[3]Glen filed a post-trial memorandum on February 4, 2019; however, Kristyn did not do so.

3

court also found that, despite Glen's assertions, although Kristyn was already certified as an LPN, she was not voluntarily underemployed while working 30 hours per week at an insurance company in order to complete nursing school. Accordingly, utilizing child support obligation Worksheet A as found in LSA-R.S. 9:315.20, the trial court increased Glen's child support obligation to $2,284.00 per month and ordered him to pay an additional $100.00 per month "towards the accrual amount until satisfied."

Glen then filed the instant appeal, assigning the following as error:

1. The trial court erred in finding that he received an additional $3,000.00 per month in income from Wechem in 2018; and

2. The trial court erred in considering Wechem, Inc.'s corporate retained earnings for the years 2014-2016, when the trial was based on income from 2018, and evidence indicated that Wechem was operating at a loss in 2018.

## DISCUSSION

An award of child support may be modified if the circumstances of the child or of either parent materially change. LSA-C.C. art. 142. Specifically, "[a]n award for support shall not be modified unless the party seeking the modification shows a material change in circumstances of one of the parties between the time of the previous award and the time of the rule for modification of the award." LSA-R.S. 9:311(A)(1). What constitutes a change in circumstances is determined on a case-by-case basis and falls within the great discretion of the trial court. Folse v. Folse, 2001-0946 (La. App. 1st Cir. 5/10/02), 818 So. 2d 923, 925. Thus, on appeal, a trial court's child support judgment will not be reversed except for abuse of discretion; however; as in any other case, on appellate review of a trial court's factual findings, those findings of fact are subject to the manifest error/clearly wrong standard of review. Harang v. Ponder, 2009-2182 (La. App. 1st Cir. 3/26/10), 36 So. 3d 954, 967, writ denied, 2010-0926 (La. 5/19/10), 36 So. 3d 219.

4

According to LSA-R.S. 9:315(C)(3), "gross income," for the purposes of determining child support, includes:

(a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, recurring monetary gifts, annuities, capital gains, social security benefits, workers' compensation benefits, basic and variable allowances for housing and subsistence from military pay and benefits, unemployment insurance benefits, disaster unemployment assistance received from the United States Department of Labor, disability insurance benefits, and spousal support received from a preexisting spousal support obligation;

(b) Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals; and

(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.

As the assignments of error are interrelated, we will consider them together. At the hearing on the cross rules for child support modification, both parties presented evidence as to their incomes. Kristyn testified that while she holds an LPN certification, she was enrolled in nursing school to obtain a higher degree. Kristyn also testified that because she was in school, she was working for an insurance company for approximately 30 hours a week. Relying on a recent pay stub, Kristyn showed that with overtime, her gross income for 2018 was $29,176.26, making her monthly gross income $2,431.00. This testimony as to her actual income was undisputed. However, Glen introduced into evidence two different internet printouts showing a higher median salary for LPNs to prove that for purposes of calculating the child support obligation, Kristyn was voluntarily

5

underemployed because she was attending nursing school and only working part-time despite already holding an LPN certification.[4]

With respect to Glen's income, Kristyn introduced his disability insurance policy and his income tax summaries from 2015 and 2016, which also reflect Glen's income information from 2014. The only documentation Glen submitted to establish his salary was Wechem's 2018 profit/loss statement. With regard to his income, Glen admitted that he was receiving $8,460.09 per month in disability payments due to his recent surgeries and a salary of $2,500.00 per month from Wechem. Glen also testified that he has an ownership interest in a separate partnership that receives rental payments from Wechem and that he received payments of $3,000.00 per month from that partnership.[5] Based on this testimony, the trial court found that Glen's monthly income was at least $13,960.00 per month, and was significantly higher than he alleged in his rule to decrease child support.

Additionally, Glen's tax information from 2014 showed his adjusted gross income to be $296,491.00. His tax information from 2015 showed his adjusted gross income to be $452,219.00. Finally, Glen's 2016 tax information showed his adjusted gross income as $387,264.00. Glen testified that those income tax statements reflect not only his actual income, but also Wechem's profits for the years, even if he does not draw on the funds. He testified that as co-owners of the company, he and his brothers generally "reinvest" the company's profits back into the company and the profits show up on the tax statements "whether [I] take it out or not."

---

[4]In the judgment, the trial court specifically rejected the argument that Kristyn was voluntarily underemployed and concluded that her 2018 gross annual income was $29,176.00. Glen did not seek review of this finding on appeal.

[5]Glen testified that he had only received $3,000.00 per month in rentals from Wechem for the past three months; before that, he received $2,400.00 per month. In determining Glen's monthly income, the trial court used the $3,000.00 figure that Glen testified he was receiving at the time of the trial.

Finally, Wechem's 2018 profit/loss statement was introduced under seal, which, according to testimony, showed that through November 30, 2018, Wechem's year-to-date loss was $56,202.83. Based on the statement and information from Wechem's C.F.O., Glen testified that Wechem was predicted to lose a total of approximately $75,000.00 for 2018; as such, Glen did not expect to receive any distributions from the company, or that there be any retained earnings. Thus, on appeal, Glen contends that because "the trial concerned 2018 income" and Wechem was operating at a loss in 2018, the trial court erred in imputing any additional income to him.

Conversely, Kristyn contends that the trial court did not abuse its discretion in considering Glen's 2014, 2015, and 2016 tax returns, rather than Wechem's profit/loss statement for 2018, as the returns showed only substantial growth and profit for the business. After careful review, we agree.

Despite Glen's contention that the trial court erred in considering his 2014-2016 income in making its ruling, a child support obligation is subject to modification only when there has been a change in circumstances **between the time of the prior support award and the time of the motion for a modification.** LSA-R.S. 9:311(A). Further, "[w]hen an obligor has an ownership interest in a business, suitable documentation shall include but is not limited to the last three personal and business state and federal income tax returns." LSA-R.S. 9:315.2(A). Accordingly, we find no error by the trial court in its decision to consider Glen's 2014-2016 tax documents in determining whether there was a change of circumstances and in determining his income from Wechem.

Additionally, we note that neither party submitted a copy of their most recent tax return as required by LSA-R.S. 9:315.2(A),[6] which at the time of the

---

[6]Under LSA-R.S. 9:315.2(A), "[s]uitable documentation of current earnings shall include but not be limited to pay stubs or employer statements. The documentation shall include a copy of the party's most recent federal tax return."

7

hearing would likely have been their 2017 returns. As such, we find Glen's reliance on the requirement in LSA-R.S. 9:315.2(A) that child support be calculated based solely on current income documentation is misplaced under the facts of this case. See Harris v. Harris, 2007-0966, (La. App. 4th Cir. 2/20/08), 976 So. 2d 347, 351; see also State on Behalf of Taylor v. Thomas, 93-1039, (La. App. 5th Cir. 6/28/94), 639 So. 2d 837, 839 (concluding that when the testimony as to income is not contested and neither party raised a question on appeal concerning the sufficiency of the evidence of income, production of tax returns can be waived if not specifically requested pursuant to LSA-R.S. 9:315.2(A)). Likewise, in Roberts v. Roberts, 95-1626 (La. App. 4th Cir. 6/5/96), 677 So. 2d 1042, the Fourth Circuit addressed a similar argument wherein the father contended that the trial court should not have used his 1993 income tax returns to determine his gross income because the rule to increase support was filed in the second half of 1994 and the trial was held in the beginning of 1995. The court disagreed with the father's argument that "the court should consider his financial condition at the time of the trial based on his accountant's projections [because] [s]uch testimony is not substantive proof whereas the tax returns are." Roberts, 677 So. 2d 1042, 1047.

On appeal, Glen makes a broad allegation that the trial court erred in imputing $3,000.00 per month in income from Wechem to him given Wechem's 2018 profit/loss statement showing an operating loss for 2018. However, the trial court's judgment demonstrates that the court carefully considered the evidence and found that, although Wechem's profit/loss statement showed on paper that the company was operating at a loss in 2018, Glen had an admitted history of not drawing earnings from the company "in order to let it grow." As such, the trial court had a right to choose whether or not Glen's testimony that he would not receive any additional draws from Wechem was credible. See Stobart v. State through Dept. of Transp. & Dev., 617, So. 2d 880, 882 (La. 1993) ("[I]f the trial

8

court['s]… findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.")

Contrary to Glen's assertions, the trial court would err in not considering Wechem's retained earnings in its calculation of Glen's gross income, as LSA-R.S. 9:315(C) recognizes that these amounts are still considered income for purposes of the child support calculation. See Holleman v. Barrilleaux, 2014-499 (La. App. 3rd Cir. 11/19/14), 161 So. 3d 789, 792 (concluding that the trial court committed legal error in failing to include undistributed profits of the father's company in its calculation of gross income). In assessing Glen's income, the court examined his 2014-2016 personal tax returns, and reviewed Wechem's 2018 profit/loss statement, as well as his disability insurance policy, and found that the court was presented with "two vastly different income amounts." The trial court acknowledged that the insurance company calculated his disability insurance based on total monthly earnings of $14,000.00, but recognized that under LSA-R.S. 9:315(C)(5), "the definition of income is 'actual income of a party'" and that his tax returns reflect that he was earning substantially more income than the $14,000.00 amount. Considering the evidence in the record, we find no manifest error in the trial court's factual findings as to the amount of Glen's income or in its decision to impute $3,000.00 in additional income for monies from Wechem. As the trier of fact, the trial court was entitled to accept or reject, in whole or in part, any witness's testimony, particularly where, as here, Glen's income was shown to be significantly higher than the amount he claimed. See Settoon v. Morales, 2019 – 0122 (La. App. 1st Cir. 9/27/19), 288 So. 3d 126, 137.

Accordingly, we find no merit in Glen's assignments of error.

9

## CONCLUSION

For the above and foregoing reasons, the trial court's April 9, 2019 judgment in favor of plaintiff/appellee, Kristyn Wisecarver, and against defendant/appellant, Glen Wisecarver, is hereby affirmed. Costs of this appeal are assessed to defendant/appellant, Glen Wisecarver.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 1217

KRISTYN WISECARVER

VERSUS

GLEN WISECARVER

GUIDRY, J., dissents with reasons.

GUIDRY, J., dissenting.

I respectfully disagree with the majority opinion. I find that the trial court erred by imputing to Mr. Wisecarver an additional $3,000.00 in monthly income for his business ownership interest. While I agree with the majority that the trial court would err in not considering retained earnings from Mr. Wisecarver's business in its calculation of his income, I nevertheless find that nothing in the record supports the trial court's determination on the amount of additional income imputed to Mr. Wisecarver. Consequently, based on the record herein, this court is unable to determine what information was used or what conclusions of fact were reached by the trial court in arriving at its figure. See Bell v. Jackson, 18-1075, p. 7 (La. App. 1st Cir. 5/31/19), 278 So. 3d. 382, 387.

While we review judgments, and not reasons for judgment, there must nonetheless be evidentiary support for a ruling. In cases where the record contains inadequate information and documentation upon which to make a child support determination under the guidelines, a remand to the trial court is necessary. St. Phillip v. Montalbano, 16-0254, pp. 5-6 (La. App. 1st Cir. 10/31/16), 206 So. 3d 909, 913, writ denied, 16-2110 (La. 1/13/17), 215 So. 3d 255. I would therefore vacate the trial court's determination of $3,000.00 in additional business income imputed to Mr. Wisecarver and remand this matter to the trial court.